# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MAGNOLIA FINANCIAL GROUP** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-7144** |
| **KENNETH ANTOS, ET AL** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiff Magnolia Financial Group, LLC ("Magnolia") (Doc. 146). For the following reasons, the Motion is GRANTED IN PART.

## BACKGROUND

This is a declaratory judgment action on a promissory note that was removed from the 29th Judicial District Court for the Parish of St. Charles. On November 11, 2013, Defendants KCI Investments, LLC ("KCI"), Kenneth Antos, and David Becklean executed a Secured Promissory Note (the "Note") with Plaintiff Magnolia for the principal sum of $2,000,000 with an interest rate of 15% per annum. Defendant Becklean also executed a Pledge and Security Agreement (the "Security Agreement") in favor of Magnolia, wherein he pledged his interest in the proceeds of a Settlement Agreement dated

1

September 22, 2012 among Twin Towers Trading Site Management, LLC ("Twin Towers"), Jeffrey Brandon, Eric Scholer, Becklean, and SMG Group (the "Settlement Agreement"). This pledge was recorded. Subsequently, on January 13, 2015, Defendants Becklean, Antos, and KCI entered into a second agreement to borrow an additional $100,000 from Plaintiff (the "Second Note"). Plaintiff contends that no principal payments were paid on the Notes by the maturity dates and that the entire principal amount plus significant interest remains due and owing on the Notes. On November 20, 2015 Plaintiff filed the instant suit seeking a declaratory judgment recognizing its rights under the Notes and the Security Agreement.

The Court granted Plaintiff summary judgment recognizing Plaintiff as attorney-in-fact for the purposes of carrying out the Security Agreement and establishing Plaintiff's right to collect attorneys' fees at the termination of the litigation.[1]

Twin Towers intervened in this action and filed an interpleader complaint relative to a portion of the Settlement Agreement proceeds. Plaintiff responded, averring that Twin Towers is not entitled to interpleader relief. Plaintiff also brought cross claims against, inter alia, Twin Towers, Donald Porges, and Porges & Eisenberg CPA, LLC (collectively the "Porges Defendants") for tortious interference with contractual relations, fraud, bad faith breach of conventional obligation, negligent breach of contract, negligent misrepresentation, and general negligence.[2] Plaintiff alleges that Porges, acting personally and on behalf of the other Porges Defendants, represented to Plaintiff that Twin Towers would forward payments under the Settlement Agreement to Plaintiff in the event of default on the Notes, but later acted to prevent Plaintiff from obtaining those funds.

---

[1] Doc. 25.
[2] Docs. 48, 123.

On motions by the Porges Defendants, the Court dismissed Plaintiff's claims for tortious interference with contractual relations and denied summary judgment as to Plaintiff's remaining claims.[3]

Plaintiff now moves for summary judgment against Defendants KCI, Antos, and Becklean on two issues. First, Plaintiff seeks summary judgment as to the amount that Defendants KCI, Antos, and Becklean owe on the Notes. Second, Plaintiff seeks summary judgment affirming that the Security Agreement is valid and enforceable. Defendants KCI, Antos, and Becklean have submitted no opposition to Plaintiff's Motion. The Porges Defendants, although not specifically named in Plaintiff's Motion as parties against which Plaintiff seeks judgment, oppose the portions of the Motion relating to the Security Agreement out of an abundance of caution.

## LEGAL STANDARD

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[6] "If the moving party meets the initial

---

[3] Docs. 70, 200.
[4] Fed. R. Civ. P. 56 (2012).
[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[6] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).

burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[7] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[8] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[9] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[11]

## LAW AND ANALYSIS

As an initial matter, the Court will only consider evidence and argument submitted on this particular Motion. Defendants Becklean, Antos, and KCI have not opposed this Motion, but did file an opposition to an earlier, similar motion for summary judgment by Plaintiff. The Court denied that motion as premature with respect to the amount owing on the Notes.[12] The Court will not consider any documents Defendants submitted in response to the previous motion because a "court need only consider the cited materials" when deciding

---

[7] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[8] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[9] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[10] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[11] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[12] *See* Doc. 25.

4

a motion for summary judgment.[13] Defendants Becklean, Antos, and KCI have cited no materials in opposition to this Motion.

When a motion for summary judgment is unopposed the court may not grant the motion by default, but is entitled to accept as undisputed the facts it presents.[14] "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[15] Instead, the proper inquiry to an unopposed motion for summary judgment is to determine whether the facts advanced in the motion and supported by appropriate evidence make out a prima facie case that the movant is entitled to judgment.[16]

## I. Amount Owed Under Promissory Notes

Under Louisiana law, the plaintiff in a suit to collect on a promissory note establishes its prima facie case by producing the note.[17] Once the note is introduced, the burden shifts to the defendant to prove a defense to the obligation.[18] Here, Plaintiff cites to copies of the Notes and an affidavit from Plaintiff's custodian of business records swearing to their authenticity.[19] This satisfies Plaintiff's burden to prove that Defendants Becklean, Antos, and KCI have an obligation to pay Plaintiff under the Notes.

In order to specify the amount owing on the Notes, Plaintiff cites to a report and supporting affidavit prepared by an economist.[20] The economist reviewed the text of the Notes and Plaintiff's financial records, accounting for interest accrued and payments made. He concludes that as of June 13, 2017,

---

[13] Fed. R. Civ. P. 56(c)(3).
[14] Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).
[15] Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006).
[16] *See Adams*, 465 F.3d at 164; *Eversley*, 843 F.2d at 174.
[17] Dugas v. Modular Quarters, Inc., 561 So. 2d 192, 200 (La. Ct. App. 1990).
[18] *Id.*
[19] Doc. 146-2 at 1–10, 55.
[20] Doc. 146-3.

5

Defendants Becklean, Antos, and KCI owe a total of $2,947,518.81 on the Notes. This Court finds the report to be facially sound. Therefore in the absence of any contrary evidence, Plaintiff is entitled to summary judgment that the Notes are valid and that Defendants KCI, Becklean, and Antos solidarily owe a total of $2,947,518.81 to Plaintiff as of June 13, 2017.

## II. Rights Under the Security Agreement

Plaintiff also moves for summary judgment in the form of a "declaration and recognition of its rights under the Pledge and Security Agreement."[21] As the Porges Defendants point out in their opposition, this request for relief is vague. At some points Plaintiff asks for "recogni[tion] of Magnolia's full rights, title and interest in" the Security Agreement, or simply "recognition [of] its rights."[22] Granting such a general request would require the Court either to determine on its own exactly what rights the Security Agreement creates, or to issue a judgment so vague as to be meaningless. Instead, the Court will consider only the rights or legal issues that Plaintiff identifies with clarity.

As best the Court can tell, those include a judgment a) that the Security Agreement is valid and enforceable,[23] b) that all terms and conditions of the Security Agreement are valid as written,[24] c) that Plaintiff is the "holder" of

---

[21] Doc. 146-1 at 1.
[22] Doc. 146-1 at 2, 23–24.
[23] Doc. 146-1 at 2, 24.
[24] Doc. 146-1 at 17, 24.

6

the Security Agreement,[25] and d) specifying Plaintiff's rights as to the collection of the pledged Settlement Agreement proceeds.[26]

## A. Issues a), b), and c): The Validity, Enforceability, and Terms of the Security Agreement

The Court already granted partial summary judgment recognizing Plaintiff as attorney-in-fact for the purposes outlined in the Security Agreement.[27] Implicit in that judgment is the finding that the Security Agreement is valid. Additionally, in this Motion Plaintiff submits and cites to a signed copy of the Security Agreement and an affidavit attesting to its authenticity, setting forth a prima facie case for the agreement's validity.[28]

The Defendants against whom this Motion is directed—Becklean, Antos, and KCI—offer no argument that the Security Agreement as a whole, or any of its provisions, is invalid. The Porges Defendants, although not named in Plaintiff's Motion, argue that the Security Agreement is invalid with respect to the Settlement Agreement because the Settlement Agreement contains an anti-assignment clause.[29] The Settlement Agreement does state that, "This Agreement shall not be assignable by the FSAPs, absent the express written consent of [Twin Towers]."[30] Becklean is a "FSAP" under the Security Agreement and therefore nominally prohibited from assigning his interest in it, which he did by executing the Security Agreement.

However, Louisiana law does not recognize anti-assignment clauses in this situation. Louisiana Revised Statutes § 10:9-406 states that,

> a term in an agreement between an account debtor and an assignor . . . is ineffective to the extent that it .

---

[25] Doc. 146-1 at 24.
[26] Doc. 146-1 at 8, 17, 23.
[27] *See* Doc. 25 at 6.
[28] Doc. 146-2 at 2–3, 11–28.
[29] Doc. 149 at 5–8.
[30] Doc. 146-2 at 43.

7

> . . prohibits, restricts, or requires the consent of the account debtor . . . to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in, the account, chattel paper, payment intangible, or promissory note . . . .[31]

The Settlement Agreement is a payment intangible under the terms of the statute because it is a general intangible in which the primary obligation of the account debtor, Twin Towers, is to pay money.[32] The provision of the Settlement Agreement purporting to require the consent of Twin Towers, therefore, does not prevent Plaintiff from perfecting a security interest in the Settlement Agreement via the Security Agreement.

The Porges Defendants argue that Louisiana Civil Code article 2653 prohibits the assignment of a right when the contract creating the right forbids its assignment.[33] However, Section 10:9-406 explicitly overrides any part of Article 2653 to the contrary.[34]

Plaintiff has proven the existence of the Security Agreement, proven that Plaintiff and Defendant Becklean are parties to the Security Agreement, and has identified the Settlement Agreement over which the Security Agreement creates a security interest. No party has advanced a sound legal argument or pointed to a dispute of material fact that calls the Security Agreement's validity into question. Accordingly, summary judgment is granted recognizing the Security Agreement as valid and enforceable by Plaintiff as written.

**B. Issue d): Magnolia's Rights as to the Collection of the Pledged Settlement Agreement Proceeds**

Plaintiff also seeks summary judgment with regard to its rights pursuant to the Security Agreement to collect the proceeds of the Settlement

---

[31] La. Rev. Stat. § 10:9-406(d) (2017).
[32] *See id.* § 10:9-102(61).
[33] *See* La. Civ. Code art. 2653.
[34] La. Rev. Stat. § 10:9-406(j).

Agreement. The Security Agreement provides that, inter alia, Plaintiff acquired a Chapter 9 security interest in the Settlement Agreement, as implemented by Louisiana law, and that in the event of a default by the borrower, Plaintiff may act to collect the Settlement Agreement proceeds.[35] The Security Agreement's definition of default includes the failure of the borrower to comply with its obligations under the Notes.[36]

Plaintiff submits evidence that Defendants Becklean, Antos, and KCI defaulted on their obligations under the Notes on or before October 21, 2015.[37] No party cites any evidence creating a factual dispute material to this issue. Accordingly, summary judgment is granted that Defendants Becklean, Antos, and KCI entered default under the Security Agreement by at least October 21, 2015.

Plaintiff appears to ask the Court to specify what rights Plaintiff has to payments under the Security Agreement in the event of the debtors' default. Without a more specific request, the Court will only go so far as to state that the post-default rights and obligations of Plaintiff and Defendants Becklean, Antos, and KCI are specified by the Security Agreement, held to be valid above, and the laws of Louisiana. The issue of Plaintiff's post-default rights with respect to the Porges Defendants—beyond the validity of the Security

---

[35] *See* Doc. 146-2 at 19–22, 26.
[36] *See* Doc. 146-2 at 25.
[37] *See* Doc. 146-2 at 57–60.

Agreement and the occurrence of default on the secured obligations—is outside of the scope of the relief that Plaintiff seeks in this motion.[38]

## CONCLUSION

For the foregoing reasons, Plaintiff Magnolia's Motion for Partial Summary Judgment is GRANTED IN PART.

New Orleans, Louisiana this 27th day of September, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[38] *See* Doc. 170 at 2–3 ("Summary Judgment is Not Requested as to the Porges Defendants").