UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MAGNOLIA FINANCIAL GROUP                    CIVIL ACTION

VERSUS                                      NO: 15-7144

KENNETH ANTOS, ET AL                        SECTION "H"

## ORDER AND REASONS

Before the Court are two Motions for Summary Judgment, one filed by Magnolia Financial Group, LLC ("Magnolia") (Doc. 274), and another by Twin Towers Trading Site Management, LLC ("Twin Towers") (Doc. 290). For the following reasons, both Motions are DENIED.

## BACKGROUND

This suit involves two promissory notes with outstanding amounts due, as well as the proceeds of a settlement agreement that were pledged as collateral for those notes. The undisputed facts before the Court on the Motions for Summary Judgment are as follows. On November 11, 2013, Defendants KCI Investments, LLC ("KCI"), Kenneth Antos, and David Becklean

1

(collectively, the "Lead Defendants") executed a Secured Promissory Note (the "First Note") with Magnolia for the principal sum of $2,000,000 with an interest rate of 15% per annum. In addition, Becklean executed a Pledge and Security Agreement (the "Security Agreement") in favor of Magnolia wherein Becklean pledged his interest in the proceeds of a settlement agreement as collateral for the First Note. Under the settlement agreement, Becklean was to receive 48 monthly payments of $103,500 from Twin Towers Trading Site Management, LLC ("Twin Towers") beginning in September 2012. Subsequently, on January 13, 2015, the Lead Defendants entered into a second agreement to borrow an additional $100,000 from Magnolia (the "Second Note"). This Court has already determined that the Notes and Pledge and Security Agreement are valid and enforceable.[1]

Magnolia asserts that, in agreeing to loan money to the Lead Defendants through the Notes, it relied in part on a letter from Donald Porges stating that he was authorized by Becklean to make payments to Magnolia from the settlement agreement in the event of default on the Notes.[2] Donald Porges is a member and manager of Twin Towers, and practices accounting through his professional corporation, Porges & Eisenberg CPA, LLC ("P&E").

The Lead Defendants defaulted on the Notes on or before October 21, 2015 by failing to make the required payments.[3] Magnolia notified the Lead Defendants of their default in October of 2015, and then on October 27, 2015, notified Twin Towers of Becklean's default in an effort to foreclose on Becklean's interest in the Twin Towers settlement. Magnolia initially provided Twin Towers with a Notice of Foreclosure on Security Interest that identified

---

[1] Doc. 220.
[2] *See* Doc. 274-10.
[3] Doc. 220 at 9. As of June 13, 2017, they owe a total of $2,947,518.81 to Magnolia. Doc. 220 at 6.

2

the debt that was in default and demanded that Twin Towers forward proceeds under the settlement agreement to Magnolia pursuant to the Security Agreement.[4] Twin Towers informed Magnolia that it would not forward such payments until it received a court order acknowledging Magolia's right to the collateral.[5] Twin Towers states that Becklean informed Twin Towers that he was not in default on the Notes.[6] Afterwards, Magnolia provided Twin Towers with copies of the underlying Security Agreement and First Note.[7] Unsatisfied, Twin Towers continued to make payments under the Security Agreement to Becklean through July of 2016.

On November 20, 2015, Magolia filed the instant suit against the Lead Defendants seeking a declaratory judgment recognizing its rights under the Notes and the Security Agreement.

On August 5, 2016, Twin Towers intervened in this action with an interpleader complaint and deposited the final payment due to Becklean under the settlement agreement into the registry of the Court. The interpleader complaint names Magnolia and Becklean as claimants, and additionally seeks a judgment that Twin Towers has discharged all liability under the settlement agreement. Magnolia answered and brought cross claims against, inter alia, Twin Towers, Donald Porges, and P&E (collectively the "Porges Defendants") for tortious interference with contractual relations, fraud, bad faith breach of conventional obligation, negligent breach of contract, negligent

---

[4] Doc. 300-2 at 1–3.
[5] *See* Doc. 6-8 at 2 (affidavit of counsel for Magnolia relating contents of conversation with counsel for Twin Towers); Doc. 290-6 at 2–3 (affidavit of counsel for Twin Towers stating that he told counsel for Magnolia that Twin Towers would not make payments to Magnolia without a court order directing it to do so or stating that Becklean was in default).
[6] Doc. 290-1 at 4.
[7] Doc. 300-4 at 2.

misrepresentation, and general negligence for failing to make payments to Magnolia following the notice of foreclosure.[8]

Magnolia now moves for summary judgment against Twin Towers, seeking a judgment that Twin Towers owes Magnolia the nine monthly payments under the Security Agreement that Twin Towers paid to Becklean after Magnolia demanded that Twin Towers forward the payments to Magnolia, a total of $931,500. Magnolia also requests that the Court find that its attorney's fees and costs associated with the collection of the collateral "are awardable" pursuant to the Security Agreement. Twin Towers opposes the Motion, arguing that it was entitled to continue to pay Becklean because Magnolia never produced a court order proving that Magnolia was due the funds.

Twin Towers separately moves for summary judgment on its interpleader complaint finding that Twin Towers has discharged all of its liability as to the $4,968,000 due to Becklean under the settlement agreement. Magnolia opposes the Motion, arguing that Twin Towers could not discharge its obligation under the settlement agreement by paying Becklean after Twin Towers received notice of foreclosure.

## LEGAL STANDARD

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] A genuine issue of fact exists only "if

---

[8] Docs. 48, 123.
[9] Fed. R. Civ. P. 56.

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[11] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[12] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[13] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[14] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[16]

---

[10] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[11] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[12] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[13] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[14] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[15] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[16] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

Both Magnolia's and Twin Towers' Motions for Summary Judgment turn on the same issue, whether Twin Towers could discharge its obligation to make payments to Becklean under the settlement agreement by paying Becklean, rather than Magnolia, after Magnolia gave Twin Towers notice of Becklean's default and assignment of the settlement agreement proceeds.[17]

Louisiana's implementation of Uniform Commercial Code Article 9 allows, in the event of default, a secured party to notify an account debtor to make payment to the secured party.[18] Louisiana Revised Statutes § 10:9-406 details the procedure for such a notification when the security is a payment intangible that has been assigned.[19]

> [A]n account debtor . . . may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that

---

[17] Twin Towers also argues that Magnolia is not entitled to summary judgment because Magnolia has not properly asserted a claim against Twin Towers for payment from the Settlement Agreement under the terms of the Security Agreement. Rule 8 of the Federal Rules of Civil Procedure requires that a pleading make "a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought." FED. R. CIV. P. 8. The purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, at 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014). Furthermore, Rule 54 authorizes and advises a court to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." FED. R. CIV. P. 54. Magnolia's Counter-Claim details extensive facts relating to the case at hand, providing more than adequate notice that Magnolia seeks payment from Twin Towers under the Security Agreement. *See, e.g.*, Doc. 48 at 21 ("Twin Towers and Porges continued to refuse to make any payments to MFG . . . . This action was in specific breach of the Pledge and Security Agreement."). Accordingly, Magnolia is not seeking to amend its complaint in this Motion and has adequately identified the claims on which it seeks judgment.

[18] La. Rev. Stat. § 10:9-607(a).

[19] La. Rev. Stat. § 10:9-406.

6

the amount due or to become due has been assigned and that payment is to be made to the assignee.[20]

Additionally, subsection (c) provides that, "if requested by the account debtor, an assignee shall seasonably furnish reasonable proof that the assignment has been made. Unless the assignee complies, the account debtor may discharge its obligation by paying the assignor, even if the account debtor has received a notification under Subsection (a)."[21]

This Court has already determined that the Security Agreement is valid and enforceable under Louisiana's version of Article 9. The parties do not dispute that Magnolia's notice to Twin Towers complied with the requirements of § 9-406 subsections (a) and (b). Were it not for subsection (c), therefore, Twin Towers' payments to Becklean would not discharge its obligation, and Twin Towers would still owe the payments to Magnolia. However, Twin Towers, the account debtor, made a request for proof of the assignment, triggering subsection (c).[22] In the security agreement, Becklean agreed to assign his settlement proceeds to Magnolia conditioned on his default under the Notes. Because the assignment was not effective until Becklean defaulted, a request for proof of Becklean's default is a request for proof of the assignment. The issue, then, is whether Magnolia, the assignee, "seasonably furnish[ed] reasonable proof that the assignment [was] made."[23] Twin Towers maintains that its request for a court order was reasonable in light of the assignor's objection that he was not in default, while Magnolia argues that Twin Towers' request for more than the underlying documents that were already provided was not in good faith.

---

[20] La. Rev. Stat. § 10:9-406(a).
[21] La. Rev. Stat. § 10:9-406(c).
[22] In the Security Agreement, Becklean agreed to assign his settlement proceeds to Magnolia conditioned on his default. Because the assignment was not effective until the
[23] La. Rev. Stat. § 10:9-406(c).

7

Very few courts have addressed the question of what constitutes reasonable proof of an assignment, and none offer helpful guidance in this case.[24] In *Wyatt v. Capital One Auto Financing*, a Texas appeals court upheld a finding on summary judgment that an assignee of an auto loan provided reasonable proof when it furnished a letter signed by the assignor on assignor letterhead assigning the account debtor's loan to the assignee.[25] The case is not particularly helpful here because neither the assignor nor assignee disputed the assignment; in fact, the assignor returned the debtor's checks with instructions that the loan had been assigned.[26] In *Buckeye Retirement Co., LLC v. Meijer, Inc.*, a court found that an account debtor could continue to pay an assignor when the assignee furnished neither sufficient notice nor reasonable proof of the assignment.[27] And *Interface Financial Group, Inc. v. Margagliotti* stands only for the proposition that the requirement for reasonable proof in subsection (c) is distinct from the notice required in subsection (a).[28]

This Court finds that the question of whether the proof that Magnolia provided was reasonable under subsection (c) is dependent on the circumstances and is an issue of fact reserved for trial. Accordingly, Twin Towers' Motion for Summary Judgment is DENIED, and Magnolia's Motion for Summary Judgment is DENIED as to the amount due under the settlement agreement.

---

[24] *See* Louis F. Del Duca, *But What If I Don't Believe You? A Debtor's Right to Seasonable and Reasonable Proof of an Account Assignment Under U.C.C. § 9-406*, 45 No. 2 U.C.C. L.J. 3 (2013) (finding only two cases applying subsection (c)).

[25] Wyatt v. Capital One Auto Fin., No. 03-08-00019-CV, 2010 WL 323124, at *6–7 (Tex. App. Jan. 29, 2010).

[26] *Id.*

[27] Buckeye Ret. Co., LLC v. Meijer, Inc., No. 279625, 2008 WL 4278038, at *3 (Mich. Ct. App. Sept. 18, 2008).

[28] Interface Fin. Grp., Inc. v. Margagliotti, No. 26217, 2012 WL 3517334, ¶10 (Aug. 15, 2012).

Magnolia also requests that the Court find that its attorney's fees and costs associated with the collection of the collateral "are awardable" pursuant to the Security Agreement. Because Magnolia's Motion for Summary Judgment is only directed against Twin Towers, the Court interprets this as a request for a judgment that Twin Towers owes attorney's fees and costs for the collection of collateral under the Security Agreement. Louisiana law does not allow for the collection of attorney's fees unless agreed to in a contract or allowed by statute.[29] Twin Towers is not a party to the Security Agreement, and therefore is not bound the agreement's fee provision. The only support that Magnolia offers for its claim for fees is a citation to Louisiana Revised Statutes § 10:9-607(d).[30] That provision allows a secured party, such as Magnolia, to deduct the expenses of collection from the amount it receives from the collateral before applying the collected collateral toward the satisfaction of the secured debt. It does not provide a right to seek collection expenses from an account debtor from whom collateral is collected.[31] Accordingly, because Magnolia cites to no agreement or statute making Twin Towers liable for attorney's fees, Magnolia's Motion for Summary Judgment is DENIED with respect to that request.

## **CONCLUSION**

For the foregoing reasons, both Twin Towers' and Magnolia's Motions for Summary Judgment are DENIED in their entirety.

---

[29] *See* Perry v. Chevron U.S.A., Inc., 887 F.2d 624, 629–30 (5th Cir. 1989) ("Louisiana law is clear; in order to recover attorney's fees, the contract between the parties must so provide or it must be otherwise authorized by statute.").
[30] La. Rev. Stat. § 10:9-706.
[31] *See, e.g.*, CapTran/Tanglewood LLC v. Thomas N. Thurlow & Associates, 2011 WL 2969835, at *3 (S.D. Tex. July 21, 2011).

New Orleans, Louisiana this 27th day of February, 2018.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**