**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MAGNOLIA FINANCIAL GROUP**                     **CIVIL ACTION**

**VERSUS**                                         **NO: 15-7144**

**KENNETH ANTOS, ET AL**                         **SECTION "H"**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This action on a promissory note was removed from the 29th Judicial District Court for the Parish of St. Charles. On November 11, 2013, KCI Investments, LLC (KCI), Kenneth Antos (Antos) and David .Becklean (Becklean) executed a Secured Promissory Note (Note) with Magnolia Financial Group, LLC (MFG) for the principal sum of $2,000,000 with an interest rate of 15% per annum. Defendant Becklean also executed a Pledge and Security Agreement (Security Agreement) in favor of MFG wherein he pledged his interest in the proceeds of a Settlement Agreement dated September 2012 among Twin Towers Trading Site management, LLC (Twin Towers), Becklean, SMG Group and others. The Pledge and Security Agreement was recorded and perfected by filing of the UCC-1. Subsequently, on January 13, 2015, Defendants, Becklean, Antos and KCI entered into an agreement to borrow an additional $100,000 from MFG (Second Note). No

1

principal payments were made on the notes by the maturity dates and the entire principal amount plus significant interest remained due and owing. On November 20, 2015, MFG filed suit seeking recovery of the amounts .due under the notes.

This Court granted MFG partial summary judgment in July of 2016, recognizing MFG as "attorney in fact for the purposes of carrying out the provisions of the Security Agreement and establishing plaintiff's rights to collect attorney fees and costs of collection at the termination of the litigation." ECF 25. Subsequently, this Court granted MFG's partial motion for summary judgment as to amounts due under the promissory notes from Antos, Becklean and KCI. ECF 220.

Twin Towers Trading Site Management, LLC intervened in this action by filing of Interpleader in August of 2016 with regard to the amounts due MFG from the Settlement Agreement proceeds. MFG responded averring that Twin Towers was not entitled to Interpleader relief and asserted Crossclaims against Twin Towers, Donald Porges, Porges and Eisenberg CPA, LLC, their insurers, and Antos, Becklean and KCI for both contractual and tort-based claims, including fraud. The insurers were dismissed on coverage defenses prior to trial and the insurers all filed for Rule 54(b) dismissals, which were entered.

This matter came on for trial on March 12, 2018, against the remaining defendants. During the course of the trial, Plaintiff in Cross-Claim, Magnolia Financial Group, LLC and Defendants in Cross-Claim, Donald Porges, Porges and Eisenberg, CPA, LLC and Twin Towers Trading Site Management, LLC settled and resolved all their respective claims. The settlement was entered on the record and accepted by the Court.

Magnolia Financial Group, LLC, reserved its rights as to the remaining party defendants, Kenneth Antos, David Becklean and KCI and continued to trial as to those remaining claims and parties.

Kenneth Antos, David Becklean and KCI failed to participate in the preparation of the pre-trial order; failed to appear or participate in the pre-trial conference, and despite service and notice failed to appear for trial. As a result, the court on motion, struck those parties' pleadings and defenses.

Magnolia Financial Group. LLC entered and admitted into evidence, without objection, documentary evidence, including exhibits Jl through 116; Pl through P45; and Dl through D8. Also, the deposition testimony of Kenneth Antos and David Becklean was entered into evidence without objection, as P46 and P47. Additionally, certain factual stipulations were entered of record, without objection, and accepted by the Court. Finally, the Court entered oral reasons in support of its acceptance of the factual stipulations based on the evidence and testimony presented.

Having considered the evidence admitted at trial and the arguments of counsel, this Court makes the following findings of fact and conclusions of law. To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

## **FINDINGS OF FACT**

1. The previous facts and findings of law as set forth in previous Orders of this Court particularly ECF 25 and ECF 220, are adopted and incorporated into the final judgment of the Court. Those findings include that Becklean, Antos and KCI were in default as of October 21, 2015; the Notes are valid and enforceable as written; and MFG is due the amount of $2,947,518.81 as of June 13, 2017 from David Becklean, Kenneth Antos and KCI, in solido, together

with legal interest from date of judicial demand; plus attorney fees and costs. The Court will refer the calculation of attorney's fees and costs to the Magistrate Judge, which amount will be included as part of the final judgment rendered in this matter.

    2. At all times material, Porges was a manager of Twin Towers; a member of KCI and member of the Board of Directors of KCI; a member/manager of Porges and Eisenberg CPA, LLC; the accountant for KCI; and an accountant for Antos.

    3. At all times material, Antos was a member/manager of KCI and was signatory to the loans entered with MFG on behalf of himself personally and on behalf of KCI and his actions are attributable to himself personally and to KCI.

    4. At all times material, Antos, Becklean, KCI, Porges and Twin Towers: (a) knew of the Notes entered with MFG; (b) knew of the Pledge and Security Agreement by and between Becklean and MFG; (c) knew of the Settlement Agreement; and (d) knew of the Release and Indemnity Agreement.

    5. At all times material, MFG had a contractual relationship with Antos, KCI and Becklean arising from the notes. Additionally, MFG had a contractual relationship with Becklean arising from the Pledge and Security Agreement.

    6. At all times material, Twin Towers held the "settlement payment" funds to be paid to MFG under the terms of the Pledge and Security Agreement;

    7. On or about November 11, 2013, defendants KCI Investments, LLC ("KCI"), Kenneth Antos ("Antos") and David Becklean ("Becklean") entered into a Secured Promissory Note ("Note") with plaintiff Magnolia Financial Group, LLC ("Magnolia") for the principal sum of TWO MILLION Dollars ($2,000,000.000) with an interest rate of fifteen percent (15.00%) per annum.

8. The Note(s) also provided for payment of attorney fees and all expenses incurred in collection.

9. Pursuant to the Note, defendant Becklean executed a Pledge and Security Agreement ("Pledge" or "Security Agreement") in favor of Magnolia (See, Exhibit J3) pledging Becklean's interest in the proceeds of a Settlement Agreement of September 22, 2012 between Twin Towers Trading Site Management, LLC ("Twin Towers"), Becklean, Antos and others.

10. The Pledge and Security Agreement was recorded by filing of the UCC-1 which perfected MFG's security interest in the settlement proceeds.

11. The Pledge and Security Agreement is valid and enforceable per its terms and conditions. ECF 220.

12. In connection with the execution of the Pledge by Becklean, in November of 2013 correspondence was forwarded to MFG from Donald Porges at the request and direction of Antos confirming that Twin Towers was authorized by both Becklean and Antos to make settlement payments to Magnolia in case of default.[1]

13. The representations and agreements set forth in the Porges Letters, which were made at the urging and behest of Antos, were material to MFG making the loan to KCI, Antos and Becklean.

14. Porges, manager of Twin Towers, was also a member of the board of KCI, an investor/stockholder in KCI and provided accounting services to KCI, Antos and Twin Towers.

15. Becklean, Antos and KCI did not disclose their business relationship with Mr. Porges to MFG at the time of entering the notes with MFG in November of 2013.

---

[1] See, J4, J7, J8, The Porges Letters.

16. MFG made the loan (which was used to fund KCI) to Becklean, Antos and KCI based on the fact that MFG reasonably believed and relied on the security and could be repaid from the settlement funds in the event of default. MFG was not repaid upon default as promised.

17. The monies provided by MFG under the notes was used to fund KCI and PRBI

18. In connection with the entering the Notes, and as inducement and consideration to fund the loans, MFG was also given shares of stock in KCI and was given position on the board of directors of KCI.

19. MFG never had any business relationship with Antos, Becklean, KCI, Porges or Twin Towers prior to entering the notes with Becklean, Antos and KCI in November of 2013.

20. Neither MFG nor any of its members ever sat on the board or had any financial interest in or business relationship with KCI prior to entering the notes with Becklean, Antos and KCI.

21. On January 13, 2015, defendants KCI, Antos and Becklean, entered into a second agreement ("Second Note") to borrow an additional $100,000.00 from Magnolia. The terms and conditions are as set forth in the Second Note and mirror those of the first note.

22. Defendants Becklean, Antos and KCI failed to pay the amounts due under the notes and the notes went into default:·

23. Antos, Becklean and KCI were placed in Default by MFG via written notice delivered in October 21, 2015 ("Default Letters").

24. Antos and Becklean admitted they were in default under the notes and that they owed the money due under the notes to MFG at all times material herein.

25. This Court has previously determined that Antos, Becklean and KCI were in default as early as October 21, 2015. See, ECF 220.

26. A Notice of Foreclosure on Security Interest pursuant to the Default was delivered to Twin Towers on October 27, 2015.

27. Twin Towers received the notice of foreclosure.

28. Twin Towers was provided a Notice of Foreclosure which demanded payment, identified the payments and to whom they were due. Additionally, Twin Towers was provided documents including the underlying Pledge, a copy of the Secured Notes and the UCC filing. See, J3, Jll, P8, P9, PIO, Pll, Pl2, Pl3, P33. MFG provided documentation regarding default by the debtors to Twin Towers.

29. Antos despite knowing of MFG's valid claim to the collateral as a secured creditor, failed to notify MFG that he was actively and intentionally acting to prevent MFG from obtaining the collateral and was undertaking actions to ensure that he would continue to control and receive Becklean's settlement payments from October 27, 2015 through July of 2016.

30. Antos per the terms of the Settlement Agreement was authorized to direct payments intended for Becklean by proper notice to Twin Towers. Antos continued to instruct Twin Towers to direct these payments to entities other than MFG after receipt of Notice of Foreclosure with the intent to deprive MFG of these funds and to use these funds for Antos' or his families own financial interest and benefit.

31. Twin Towers at the direction and instruction of Antos continued to pay amounts to Antos, including Becklean's share of the settlement proceeds, which were deposited to accounts as instructed by Antos after October 27, 2015.

32. The ledger records of Twin Towers show that none of the payments intended for Becklean and actually due MFG were ever deposited directly into an account owned or managed by Becklean. At the direction and control of Antos, these funds were deposited to or paid to entities other than Becklean controlled by Antos and his family.

33. Despite issuance and receipt of the Notice of Default and the Notice of Foreclosure on Security Interest, Antos instructed Twin Towers to continue to make payments under the Settlement Agreement as he directed and to deny making any payments to MFG, though Antos knew MFG was legally entitled to the payment of these funds.

34. After receiving the Notice of Foreclosure, Antos took affirmative action to ensure that Becklean's payments were made in preference to the secured claim of MFG in order to deprive MFG of the funds and to convert and use the funds for Antos' own use and benefit as he instructed and directed.

35. Unknown to MFG, on or about November 10, 2015, and shortly after receiving Notice of Foreclosure, Becklean at the direction and instruction of Antos, entered a Release and Indemnity Agreement with Twin Towers. Thereafter, and at the direction of Antos, Twin Towers continued to make payments as instructed by Antos of amounts due Becklean under the Settlement Agreement of $103,500 monthly. Per the terms of the Release and Indemnity Agreement, Becklean agreed to indemnify Twin Towers against its potential liability to MFG stemming from Twin Towers' continued payments under the Settlement Agreement.

36. Additionally, Trial Stipulations were entered as follows, without objection, and accepted by the court:

A. Kenneth Antos never advised Magnolia Financial Group, LLC that payments were continuing to Mr. Becklean after October 27, 2015 and prior to August 5, 2016;

B. Kenneth Antos never advised MFG that he was diverting Becklean settlement funds for his own personal use and/or family use;

C. Kenneth Antos never advised MFG that the Release and Indemnity Agreement had been entered into by and between Becklean and Twin Towers;

D. Kenneth Antos was removed as CEO of KCI/PRBI due to his misappropriation a misuse of corporate funds;

E. Kenneth Antos was removed as the CEO of KCI/PRBI on or about November 8, 2015 due to his misappropriation and personal use of corporate funds;

F. Mr. Antos directed and instructed Mr. Porges to make the Becklean Settlement payments to entities in which Antos or his family had personal financial interests;

G. Mr. Antos was at all times relevant, the manager and member of the board of KCI/PRBI until his removal on or about November 8, 2015;

H. Mr. Antos directed the confection of the Release and Indemnity Agreement;

I. Mr. Antos directed the confection of the Release and Indemnity Agreement with the intent to deprive and convert the Security Agreement and Settlement Agreement proceeds to himself and his family businesses;

J. Mr. Antos directed Mr. Becklean to enter into the Pledge and Security Agreement pursuant to a fraudulent scheme to deprive MFG of the Security Agreement and Settlement Agreement proceeds for his own benefit, interest and advantage;

K. Mr. Antos directed Mr. Becklean to enter into the Release and Indemnity Agreement pursuant to a fraudulent scheme to deprive MFG of the Security Agreement and Settlement Agreement proceeds;

L. Mr. Antos directed Mr. Becklean to enter into the Security Agreement with the fraudulent intent to divert or convert the security interests and settlement instrument proceeds to himself or his family businesses and deny those funds to MFG;

37. The Court accepted the trial stipulations offered by the parties (Number 37(A) through (L), above) and gave oral reasons for accepting the stipulations based on the testimony and evidence offered at trial.

38. The Court finds that Mr. Antos took advantage of Mr. Becklean's questionable capacity in furtherance of his fraudulent scheme to deprive MFG of the Settlement Agreement proceeds to which MFG was rightfully entitled.

39. Becklean relied on Antos in handling his business affairs and specifically his business affairs in relation to the Settlement Agreement and all payments made thereunder and Becklean abided by Antos' instructions and demands with regard to signing the Release and Indemnity Agreement and Antos' direction for payments to be made under the Settlement Agreement. Antos directed Becklean to sign the Release and Indemnity Agreement.

40. Becklean at the time of signing the Release and Indemnity Agreement had no financial ability to honor the agreement and no ability to repay or indemnify Twin Towers and was for all practical purposes broke and without financial resources.

41. Antos knew that Becklean had no ability to repay or indemnify Twin Towers when he requested him to sign the Release and Indemnity Agreement;

42. Antos directed Becklean to sign the Re\ease and Indemnity Agreement so that Settlement Agreement payments could continue as Antos

directed. Antos had access to Becklean and the ability to direct and have Becklean sign the Release and Indemnity Agreement for Antos' own and continuing benefit.

43. Becklean, Antos, KCI and Twin Towers knew of the Notice of Foreclosure on October 27, 2015, when supplied with the Notice of Foreclosure, which identified the debt, the collateral and to whom payments were to be directed. Becklean and Antos later admitted that they owed the amounts due under the notes and that they were in default under the notes due MFG. Despite this knowledge, Antos undertook and persisted in a course of conduct to deny MFG the funds which it was due after default under the terms of the Pledge and Security Agreement, all with willful and malicious intent to injure MFG.

44. Antos and Becklean did not advise Twin Towers they were in default nor owed the money to MFG under the Notes. Instead Antos intentionally acted to deny MFG the settlement payments by directing Becklean to enter into the Release and Indemnity Agreement with Twin Towers when he knew the funds were to be paid to MFG and he knew that Becklean had no ability to honor the indemnity agreement.

45. Antos used Becklean by virtue of his position and control over Becklean. Antos was responsible for and in directing Becklean to sign and enter the Release and Indemnity Agreement.

46. The actions of Antos indicate he acted purposefully, willfully and with malicious intent to cause loss to MFG by depriving MFG of the funds it was due under the terms of the Pledge and Security Agreement. The actions of Antos were thus willful and malicious and substantially certain to deny MFG the funds to which it was entitled in payments from the Settlement Agreement and per the Security Agreement.

47. None of the defendants advised Magnolia of this release agreement, nor did they advise Magnolia that Becklean's payments would continue to be made at the direction and behest of Antos.

48. Becklean, Antos and KCI made the decision to continue to direct Twin Towers to pay Becklean's portion of the settlement proceeds to parties other than MFG despite their full knowledge of MFG's valid secured claim to the funds and Twin Towers legal requirement to pay MFG in the event of default.

49. Twin Towers filed an Interpleader action in August of 2016, depositing the last remaining payment of $103,500 due Becklean under the settlement agreement into the registry of the Court.[2]

50. Twin Towers' filing of the Interpleader was MFG's first formal and clear notice from Twin Towers that the collateral had not been protected and had been paid instead to another party. 4 Likewise, neither Antos, Becklean nor KCI at any time advised MFG that these funds continued to be paid to other parties and were not protected or escrowed. MFG objected to the interpleader and the Court after consideration, allowed MFG to assert claims based on the Interpleader filing.[3]

55. MFG filed the pending Cross Claim against Antos, Becklean, KCI, Twin Towers, and other Defendants seeking recovery I of amounts due under the security instrument and settlement agreement. MFG also asserted contractual and tort claims based on the actions of the defendants in failing to pay the funds after notification of default and foreclosure. 6

57. The actions of Antos: In requesting the "Porges Letters" indicating the security would be paid to MFG in the event of default and upon which MFG

---

[2] See, ECF 26, 28, 38 and 39.
[3] See, ECF 36.

materially relied in issuing the loans to KCI, Becklean and Antos; In taking actions to deny payment to MFG once default occurred; In directing Becklean to enter the Pledge and Security Agreement; In directing Becklean to enter the Release and Indemnity Agreement; In failing to notify MFG that the settlement proceeds due MFG were continuing to be paid to other parties; In directing that continued payments under the settlement agreement be made to entities in which Antos or his family had a financial stake or interest; In directing that payments be made to entities other than MFG when Antos knew MFG was entitled to the settlement proceeds; In denying MFG the funds to which it was entitled when Antos knew this would cause financial loss and damage to MFG; In continuing to deprive MFG of funds to which he knew it was legally entitled; In failing to notify MFG of his actions in order to obtain an unjust advantage; all of these acts done in an intentional and fraudulent scheme to deprive and deny the settlement fund proceeds to MFG for Antos' own use, benefit, gain and unjust advantage. The intentional actions of Antos to deny MFG the settlement funds constitute fraud entitling MFG to recovery herein.

## **CONCLUSIONS OF LAW**

1. The Court adopts and incorporates its findings from ECF 25 and ECF 220 and incorporates and makes those findings of fact and law part of this judgment. Specifically, the Court finds that MFG was attorney in fact per the terms of the Security Agreement and MFG has the right to collect attorney fees at the termination of the litigation per the Notes and the Security Agreement.

2. Additionally, per the terms of the note and the Security Agreement, MFG is entitled to all costs of collection which includes attorneys' fees and other costs incurred in collection of the amounts due MFG.

3. The notes by and between MFG, Antos, Becklean and KCI are valid and enforceable and Defendants, Antos, Becklean and KCI, owe a total of $2,947,518.81, in solido, plus judicial interests from the date of demand until collected to MFG, plus attorney fees and all costs of collection which amounts are to be determined by the Magistrate and included in the final judgment.

4. Additionally, based on the evidence and testimony at trial, stipulations of the parties and for oral reasons assigned, the Court finds that Antos engaged in fraud by his actions and omissions to permanently deprive MFG of the funds to which it was entitled and to gain an unjust advantage and gain benefit by Antos' use of these funds for his personal financial interests or that of his family.

3. Fraud is a misrepresentation or suppression of the truth made with the intent to obtain unjust advantage or cause loss or inconvenience to the other party. Fraud can result from silence or inaction of a party. LSA-CC Art. 1953. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. LSA-CC Art. 1957. A party liable for fraud is responsible for all damages and attorney fees. LSA-CC Art. 1958.

As noted, Antos, Becklean and KCI did not appear at trial. On motion, the Court struck their pleadings and defenses and allowed · MFG to proceed to establish their claim. MFG introduced sufficient evidence in the form of trial testimony, documentary evidence and exhibits, deposition testimony, trial stipulations and based on oral reasons assigned by this court, to establish its prima facie case for fraud against Antos. The Court further believes that MFG established by a preponderance of the evidence that the defendant Antos engaged in fraud to deprive MFG of the funds to which it was entitled and that Antos use these funds for his own financial interests and benefit or that of his family.

The record and evidence demonstrate that Antos failed to disclose to MFG that payments were continuing to be made to Becklean; that Becklean at Antos' urging and direction had entered into a Release and Indemnity Agreement with Twin Towers to deny payments to MFG; that Antos continually directed Twin Towers to continue making payments due MFG to accounts that were neither owned, managed or controlled by Becklean and instead were used to the benefit of Antos or his family interest. The ledger of Twin Towers shows that none of the payments at issue and intended for Becklean from October 27, 2015 through July of 2016 were ever paid directly to Becklean. Instead the funds went to accounts as directed by Antos which either benefitted the financial interest of Antos or benefitted the financial interest of his family. Antos knew these payments were to be made to MFG as he knew and admits the Notes were at all times in default to MFG and that MFG was owed the money under the notes. Despite this knowledge, Antos undertook actions to deny and deprive MFG of these funds and moneys to which they were legally entitled. His actions were intentional and willful and made with the intent to deprive MFG of the funds and to use and control the funds for his own personal financial interest and benefit or that of his family.

Antos induced MFG to fund the loans to MFG on Antos' representation MFG would be repaid from the settlement proceeds on default. MFG justifiably and reasonably relied on this representation and it was material in MFG's decision to enter and fund the loans to KCI. Antos knew he did not have authorization as required from Becklean to authorize the payments from the settlement proceeds to be directed to MFG on default. Further Antos did not intend to pay the money from the settlement proceeds to MFG on default as evidenced by his actions from October 21, 2015, forward. Instead he actively undertook to obtain the Release and Indemnity Agreement which was contrary

15

to MFG's interest and directed Twin Towers to continue paying Becklean's portion of the settlement proceeds as he directed and instructed. At no time did Antos advise MFG of this Release and Indemnity Agreement or that moneys were continuing to be paid which deprived MFG of its collateral. Antos knew these facts were material to MFG but omitted to advise or inform MFG, with the intent to defraud MFG or gain an unjust advantage.

Antos at all times knew that the protection offered by the collateral payments was material in MFG entering the loan with Antos, Becklean and KCI. Yet Antos acted wrongfully to deny these payments to MFG despite knowing of the default and MFG's legal entitlement to the collateral and the settlement funds.

Antos actions hid and suppressed the truth from MFG that the collateral was being compromised and depleted and that Antos had acted to have Becklean sign the release and indemnity agreement in order that payments may continue to parties other than MFG. The ledger records introduced at trial all show that the Becklean payments were all made to entities other than Becklean and that MFG received none of the payments.

The actions of Antos, based on the evidence, particularly the payment ledgers, the deposition of Antos and Becklean and the live testimony heard at trial as well as the factual stipulations and oral reasons given all evidence the intentional and willful acts of Antos to direct the settlement payments away from MFG and to instead direct payment to entities other than Becklean. Antos knew his actions would cause loss to MFG. Antos persisted in his willful acts nonetheless.

More importantly, Antos obtained an unjust advantage by his intentional acts in denying MFG payments due under the settlement agreement. In this case, the continued payments at the direction and

16

instruction of Antos allowed Antos to attempt to continue to fund KCI and/or PRB or other entities in which Antos or his family had a financial stake and interest. These actions and decisions to pay themselves rather than MFG are the very essence of fraud and intentional misrepresentation.

After receiving notification of the default and notice of foreclosure in October of 2015, Antos took affirmative steps to ensure that MFG was not paid amounts due under the Settlement Agreement. Specifically, on or about November 10, 2015, Antos had Becklean enter a Release, Indemnity and Set-Off Agreement with Twin Towers. Antos had Becklean enter this agreement with the specific intent to deny these payments to MFG and to continue payments to other parties and entities to which Antos' or his family had financial interests or debts. At the time, Antos knew of the default, knew of MFG's perfected interest under the Security Agreement and knew of MFG's legal entitlement to the funds. Despite all this Antos acted to deprive MFG of the funds and control and utilize the funds for his own financial interest and benefit or that of his family.

Antos, when faced with Notice of Default and Foreclosure, chose to act to deny and deprive MFG of the settlement proceeds to which it was legally entitled by having Becklean enter into a Release and Indemnity Agreement with Twin Towers. This agreement adversely affected MFG's interest and promoted the interest of Antos, KCI and PRBI. MFG had no knowledge of this agreement until· well after issue was joined on the Cross-Claims against the Porges Defendants. Antos had Becklean sign and enter the agreement with the intent to deny MFG these funds and to allow Antos' to continue to direct and utlilize the funds for his own or his family's benefit and purpose.

Antos knew the amounts were due and owing to MFG. Antos knew MFG was a secured creditor. Antos knew Becklean had no ability to indemnify Twin

17

Towers. Yet despite all this, Antos undertook a course of intentional actions to deny and deprive MFG the settlement payments and ensure he could continue to direct these funds to accounts other than those owned or controlled by Becklean and to accounts or entities in which Antos or his family had a financial stake or interest. Again, these intentional actions are the essence of fraud.

    MFG established its prima facie case and the Court further believes MFG established by a preponderance of the evidence that the defendant ANTOS engaged in fraud, including willful, deceitful and intentional acts of the Defendant, Antos, as noted above. This fraud caused damage and loss to MFG in the amount of the settlement payments it was deprived and denied by Antos intentional and willful actions ($931,500).

    New Orleans, Louisiana this 11th day of May, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**